**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**LENORA JONES**                                                      **PLAINTIFF**

**v.**                                                      **Civil No. 1:21cv68-HSO-BWR**

**DENIS RICHARD MCDONOUGH,**
*in his capacity as Secretary of the U.S.
Department of Veterans Affairs*                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DENIS RICHARD MCDONOUGH, IN HIS CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF VETERANS AFFAIRS' MOTION [65] FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Denis Richard McDonough, in his capacity as Secretary of the U.S. Department of Veterans Affairs' Motion [65] for Summary Judgment. The Motion [65] is fully briefed. After due consideration of the Motion [65], the parties' submissions, and relevant legal authority, the Court finds that the Motion [65] should be granted in part as to Plaintiff Lenora Jones's claims for a hostile work environment and for disability interference, and denied in part as to Plaintiff Lenora Jones's retaliation claims.

## I. BACKGROUND

On March 11, 2021, Plaintiff Lenora Jones ("Plaintiff" or "Jones") filed a Complaint [1] against Defendant Denis Richard McDonough, in his capacity as Secretary of the U.S. Department of Veterans Affairs ("Defendant"), alleging claims for retaliation and a hostile work environment in violation of the Rehabilitation Act

of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 791 et seq., and Title VII of the Civil
Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and for disability
interference under the Rehabilitation Act. Compl. [1] at 9-12. Jones is a Human
Resources Specialist at the Gulf Coast Veterans Healthcare System. Compl. [1] at 2-
3; Ex. [71-3] at 74. It is undisputed that she is white and "suffers from arthritis,
migraines, fibromyalgia, and a detached retina." *See* Compl. [1] at 3; Answer [6] at
5; Ex. [71-3] at 74, 76; [71-9] at 4.

Plaintiff asserts that Constance Ceasar ("Ceasar"), the Acting Human
Resources Chief for the Gulf Coast Veterans Healthcare System and Jones's
supervisor, belittled Plaintiff's disability and favored black employees. Compl. [1] at
3-5; Ex. [71-3] at 74, 78-80. Plaintiff contacted an Equal Employment Opportunity
("EEO") counselor regarding Ceasar's conduct on December 1, 2017, informing the
counselor that Ceasar was harassing her based on her disability and race, Ex. [71-3]
at 65; Ex. [74-1] at 2, and she contends that after Ceasar learned of the informal
complaint, Ceasar "assigned one of her employees the task of auditing [Plaintiff]'s
work to find any errors," all in an effort to find a justification to discipline Plaintiff,
Compl. [1] at 7; Ex. [71-3] at 101. Plaintiff further claims that Ceasar stated that
Plaintiff would be downgraded from her GS-12 grade to GS-6 if she sought
accommodations for her disability. Compl. [1] at 3-4; Ex. [71-3] at 78.

On February 20, 2018, Plaintiff received a notice of proposed removal and
was instructed to report to the Supply Chain Management Service rather than the
Human Resources office. Compl. [1] at 9; Ex. [66-1] at 32-33; [66-13] at 1; [71-3] at

134-144. The proposed removal was rescinded over a year later, on December 4, 2019, and Plaintiff resumed working in Human Resources. Ex. [66-18] at 4; [71-17] at 2. Plaintiff currently works virtually for Veterans Integrated Service Network 16 based in Jackson, Mississippi, in the same position and GS level as she had at the Gulf Coast Veterans Healthcare System. Ex. [71-14] at 5-6.

Following the close of discovery, Defendant filed the present Motion [65] for Summary Judgment, arguing that "Plaintiff cannot meet her prima facie burden and Defendant had a legitimate, non-discriminatory reason for its actions." Mem. [66] at 1. Defendant takes the position that Plaintiff has not suffered an adverse employment action or demonstrated the causation necessary for her claims to survive. *Id.* at 15, 17-19. Regarding the proposed removal, Defendant claims that it was motivated by Plaintiff's inability to "adequately perform the tasks that were assigned to her and her unprofessional conduct." *Id.* at 1-2. Defendant further asserts that Plaintiff's disability interference claim is untenable because "[s]he has failed to point to any specific ways in which she was harmed or to how Defendant interfered with her rights under the Rehabilitation Act." *Id.* at 23. In addition, Defendant claims that Plaintiff lacks evidence of a hostile work environment because she cannot prove that she suffered harassment that was sufficiently severe or pervasive as to alter the conditions of her employment. *Id.* at 24-26.

Plaintiff responds that the proposed removal and her temporary reassignment were adverse employment actions that were "catastrophic for Jones." Mem. [72] at 9. She contends that Defendant's stated reasons for the proposed

removal were pretextual, claiming that the misconduct did not justify removal and was discovered only as a result of Ceasar's investigation into Plaintiff after learning of Plaintiff's EEO complaint. *Id.* at 7-10. Plaintiff further maintains that she has shown sufficient harassment based on statements made by coworkers about Ceasar's inner circle being exclusive to non-white employees and Ceasar's statement about Plaintiff being downgraded if she sought accommodations. *Id.* at 19-20. Plaintiff concedes that she is no longer pursuing her disability interference claim and confirms that "[t]here are three claims in this case: (1) retaliation [based on Title VII and the Rehabilitation Act], (2) racially disparate harassment, and (3) disability harassment." *Id.* at 12-13 & n.2.

Defendant replies that any evidence Plaintiff has submitted to show that she was distressed due to her reassignment is contradicted by her sworn deposition testimony, Reply [75] at 2, and that any audits of Plaintiff's work occurred only after it was discovered that she had "illegally hired employees that had no [veterans] preference," *id.* at 6-7. Defendant further argues that Plaintiff has only put forth evidence of medical conditions, not of a diagnosis of disability that resulted in limitations actually communicated to Defendant. *Id.* at 7-8.

## II. DISCUSSION

### A.   Summary judgment standard

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might

affect the outcome of the lawsuit under governing law." *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (quoting *Hamilton*, 232 F.3d at 477).

The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., L.L.C.*, 767 F.3d at 511 (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). When considering the record, a court must view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in her favor. *Id.*

B.     Plaintiff's retaliation claims

Plaintiff claims that she was retaliated against for filing an EEO complaint asserting disability and racial harassment, in violation of both Title VII and the

Rehabilitation Act. Compl. [1] at 6-10. Title VII prohibits an employer from discriminating against an employee who "has made a charge, testified, assisted, or participated in any manner in [a Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); *Saketkoo*, 31 F.4th at 999. Likewise, the "Rehabilitation Act prohibits retaliation against individuals who have opposed discriminatory employment practices or made charges of discrimination." *Cohen v. Univ. of Tex. Health Scis. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014) (quoting *Shannon v. Henderson*, 275 F.3d 42, 2001 WL 1223633, at *3 (5th Cir. 2001) (unpublished)); 29 C.F.R. § 1614.101(b) ("No person shall be subject to retaliation for opposing any practice made unlawful by . . . the Rehabilitation Act . . . .").

Retaliation claims under both Title VII and the Rehabilitation Act are analyzed under an identical framework and apply the burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Compare Saketkoo*, 31 F.4th at 999-1000 (Title VII), *with Cohen*, 557 F. App'x at 277-78 (Rehabilitation Act). To establish a prima facie case, the plaintiff must show "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo*, 31 F.4th at 1000 (quotation omitted); *Cohen*, 557 F. App'x at 277-78. If the plaintiff carries her initial burden, the defendant must articulate a legitimate nonretaliatory reason for its actions. *Saketkoo*, 31 F.4th at 1000; *Cohen*, 557 F. App'x at 278. "If the employer meets this burden, then the plaintiff has the

burden to prove that the proffered reason is pretextual." *Saketkoo*, 31 F.4th at 1000; *Cohen*, 557 F. App'x at 278.

The parties agree that Plaintiff satisfied the first element of a prima facie case when she engaged in protected activity under Title VII and the Rehabilitation Act by making an informal complaint regarding racial and disability discrimination to an EEO counselor on December 1, 2017, and by later filing a formal EEO complaint on February 28, 2018. Mem. [66] at 16; Ex. [71-3] at 65. Defendant argues that Plaintiff cannot establish the second and third elements of her prima facie case, an adverse employment action or causation. Mem. [66] at 17.

1.    Whether Plaintiff suffered an adverse employment action

In the context of a retaliation claim, an adverse employment action is one that could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Such action must be material; "petty slights, minor annoyances, and simple lack of good manners" are insufficient. *Id.* at 68. Determining whether an act is materially adverse is context-specific. *Id.* at 69. For example, a "reassignment of job duties is not automatically actionable" but could be materially adverse where the position to which the plaintiff is reassigned is less prestigious and more arduous than her original job. *Id.* at 71; *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008); *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 347 (5th Cir. 2016).

To demonstrate that she suffered an adverse employment action, Plaintiff points to (1) Ceasar's investigation of Plaintiff to find errors in her work, Mem. [72]

at 7; Ex. [71-3] at 101; (2) Ceasar's birthday party where employees who attended were permitted to leave work an hour early, Mem. [72] at 8; Ex. [71-3] at 78; (3) Plaintiff's temporary reassignment from Human Resources to Supply Chain Management Services, Mem. [72] at 9; Ex. [71-3] at 131; and (4) Plaintiff's receipt of a notice of proposed removal, which was later rescinded, Mem. [72] at 9; Ex. [71-3] at 134-144.

a.    Scrutiny of Plaintiff's work and denying leave

The first two actions alleged, the scrutiny of Plaintiff's work and denying an hour of leave granted to other workers, do not qualify as materially adverse actions that would dissuade a reasonable worker from making a charge of discrimination. *See, e.g.*, *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (holding that "subjecting [the plaintiff] to disciplinary write-ups[] and micro-managing her performance" are not materially adverse employment actions); *Boston v. McDonough*, No. 1:18-cv-391-LG-RPM, 2021 WL 2556594, at *5 (S.D. Miss. June 22, 2021) ("[C]ritical emails written about [plaintiff] . . . cannot be considered material adverse actions even when considered along with [her] other allegations."); *E.E.O.C. v. Bass Pro Outdoor World, LLC*, No. 4:11-cv-3425, 2013 WL 1124063, at *6 (S.D. Tex. Mar 18, 2013) ("[C]lose scrutiny, denying days off, failing to alter a schedule, or assigning a heavy workload are not considered adverse actions."); *Soublet v. Louisiana Tax Comm'n*, 766 F. Supp. 2d 723, 735 (E.D. La. 2011) ("The Court finds that plaintiff's complaints of increased or altered supervision, criticism and

documentation, even when considered together, would not dissuade a reasonable worker from making or supporting a charge of discrimination.").

b.   Plaintiff's temporary reassignment

As for her temporary reassignment, Plaintiff was instructed to report to Supply Chain Management Services to "continue performing administrative duties." Ex. [71-3] at 131; [71-14] at 42-43. Reassignments can constitute a materially adverse employment action when the new position is less prestigious, involves a reduction to mostly menial or arduous tasks, or is significantly humiliating, *see White*, 548 U.S. at 71 (holding reassignment was an adverse action when the plaintiff's new position was "by all accounts more arduous and dirtier" and her previous position "was objectively considered a better job and the male employees resented [the plaintiff] for occupying it"), but a plaintiff's "subjective preference for a different position cannot make her transfer to [a different] department a materially adverse action," *Aryain*, 534 F.3d at 485 (holding that a lateral transfer where the employee received equal pay and "somewhat different" responsibilities was not a materially adverse action). A reassignment that does not affect "job title, grade, hours, salary, or benefits" and does not cause "a diminution in prestige or change in standing among her co-workers," or a change in duties is generally not a material adverse action. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009); *Boston*, 2021 WL 2556594, at *6.

At her deposition, Plaintiff acknowledged that her GS level, pay, and title were unchanged by the reassignment. Ex. [71-14] at 42. In discussing the

administrative tasks she was assigned to perform after she was reassigned from Human Resources, Plaintiff stated that "basically it was a chair for [her] to sit in. If they had something for [her] that [she] could do, [she] would go do it for them, but otherwise, it was just sitting in a chair, not doing anything." Ex. [71-14] at 42. Regarding the effect the reassignment had on her, Plaintiff testified at her deposition that "[i]t made [her] feel like, after 20-something years, [she] didn't know how to do [her] job that [she] had been doing" but "it was less stress because [she] didn't have to worry about crying hysterically every day at work because somebody would come in there and . . . just start on [her] about 'This is wrong, and this is wrong, and you didn't.'" *Id.* at 55.

However, in response to Defendant's Motion [65] for Summary Judgment, Plaintiff has now submitted a declaration where she states that the reassignment "was a very difficult experience" because she "really identif[ied] with [her] job, and this move felt like the VA was saying [she] was no good." Ex. [71-20] at 2. She further avers that it caused her to "just sit there, worrying and stressing about what would happen to" her. *Id.* This declaration, dated October 3, 2022, postdates her deposition where she stated that her reassigned position was "less stress," *id.*; Ex. [71-14] at 2, 55, and "[i]t is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony," *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). A "summary judgment affidavit may supplement deposition testimony by clarifying or amplifying the facts with greater detail but may not

simply 'tell[ ] the same story differently.'" *Bouvier v. Northrup Grumman Ship Sys.,*

*Inc.*, 350 F. App'x 917, 920-21 (5th Cir. 2009) (quoting *S.W.S. Erectors, Inc.*, 72 F.3d

at 496) (alteration in original). Plaintiff's declaration as to the stress caused by her

reassignment directly contradicts her deposition, and she has made no effort to

explain this contradiction. *Compare* Ex. [71-14] at 55, *with* [71-20] at 2. This is

insufficient to create a genuine dispute as to this fact. *S.W.S. Erectors, Inc.*, 72 F.3d

at 496.

The record reveals a mixed picture of the reassignment. While moving to a

job that is "less stress" is unlikely to dissuade an employee from reporting

misconduct, Plaintiff's description of her reassigned position as "just sitting in a

chair, not doing anything" suggests more than a minor change in working

conditions. Ex. [71-14] at 42. Plaintiff stated in her deposition that she "was no

longer allowed to do anything with HR" and her coworkers "were told not to talk to"

her. *Id.* at 55; *see also* Ex. [71-3] at 105 (affidavit of one of Plaintiff's coworkers

stating that her reassignment "was broadcasted to all of [Human Resources

Management]" and that "[a]ny conversations about [her] were forbade"). Defendant

has not provided evidence regarding Plaintiff's job duties after she was reassigned

besides the notice of reassignment, which stated that she would "continue

performing administrative duties" without offering any additional details as to what

those duties would include. *See* Ex. [66-13] at 1. Even though Plaintiff retained her

title, pay, and grade, viewing the evidence in the light most favorable to her, and

when combined with her proposed notice of removal, the loss of responsibilities and

impact on her relationship with her coworkers caused by the reassignment is sufficient at the summary judgment stage to create a fact question as to whether she suffered a material adverse employment.

c.    Plaintiff's proposed removal

Courts are divided on whether proposed removals are sufficient on their own to constitute an adverse employment action. *See, e.g.*, *Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 203 (D.D.C. 2008) ("Proposed removals . . . are exactly the kind of acts which the statute covers."); *Solloway v. White*, No. 1:13-cv-03827-TWT-WEJ, 2017 WL 1170895, at *31 (N.D. Ga. Feb. 15, 2017) ("A reasonable employee would not have been dissuaded from making or supporting a charge of discrimination based on the issuance of a Notice of Proposed Removal, particularly given that it was ultimately rescinded, and that during the time it was pending, plaintiff received her full salary and benefits."), *report and recommendation adopted by* 2017 WL 1134460 (N.D. Ga. Mar. 27, 2017). In a recent case, the Fifth Circuit affirmed a district court's determination that a notice of proposed removal was not a materially adverse action. *See Price v. Wheeler*, 834 F. App'x 849, 853 n.4, 858 (5th Cir. 2020). This Court has found "that it is appropriate to consider notices of proposed removals on a case-by-case basis." *Boston*, 2021 WL 2556594, at *6. Under this approach, "a Notice of Proposed Removal that specifically mentions protected activity as part of its basis" and that remained pending for over a year was found sufficient to deter a reasonable worker from engaging in protected activity. *Id.*

Here, Plaintiff's proposed removal differs from those which were sufficient in other cases. Unlike *Boston*, Plaintiff's proposed removal made no mention of protected activity. *Compare Boston*, 2021 WL 2556594, at *6, *with* Ex. [71-3] at 134-44. Instead, it listed multiple documented instances where Plaintiff failed to perform assigned tasks and charged her with "conduct unbecoming a federal employee." Ex. [71-3] at 134-44. It is evident that a reasonable worker would likely be dissuaded from reporting discrimination when an employer subsequently informs an employee that the employee's possible removal is based on her protected activity, but a proposed removal based on documented job performance issues does not inherently carry the same risks. Likewise, Plaintiff has not established that the notice of proposed removal was a mere formality prior to a final decision to remove, rather than an interim step that allowed her the opportunity to contest the allegations and retain her position. Instead, the notice informed Plaintiff that it was not a final decision and that she had the opportunity to review the evidence against her, prepare a written reply, and submit evidence of her own, Ex. [17-3] at 143, and Plaintiff acknowledged in her deposition that she filed a reply to the proposed removal, Ex. [71-14] at 183.

Nevertheless, the Court finds that, if considered together with Plaintiff's reassignment, the notice of proposed removal could dissuade a reasonable worker from making a discrimination charge, and therefore Plaintiff has created a genuine issue of material fact regarding whether she suffered a materially adverse action. *See White*, 548 U.S. at 57. The proposed removal was pending from February 20,

2018, to December 4, 2019, Ex. [71-17] at 2, and Plaintiff testified that the proposed removal caused her "immense[]" stress "but it was still not as bad as it was when [she] was having to go into the office and see Ms. Ceasar . . . every day," Ex. [71-14] at 55-56. The lengthy delay from the issuance of the proposed removal to the ultimate decision retracting it could be viewed by a reasonable factfinder to cause stress due to continued uncertainty, as it did for Plaintiff. *See* Ex. [71-3] at 55. A reasonable worker may be dissuaded from filing or making a charge of discrimination when her employer responds by reassigning her, reducing her responsibilities, and leaving her in limbo for nearly two years with a proposed removal pending. In sum, Plaintiff has carried her summary judgment burden on this element of her prima facie case of retaliation.

2.     Whether Plaintiff can show causation and pretext

Defendant argues that even if Plaintiff has provided sufficient evidence of an adverse employment action, she has failed to create a genuine dispute that retaliation was a but-for cause of that action. Reply [75] at 4-5. Defendant states it has a non-retaliatory justification for its action and Plaintiff has not shown that retaliation was the real motive. *Id.* The Court finds that, while a close call, Plaintiff has demonstrated a genuine dispute as to whether the reassignment and proposed removal would have occurred in the absence of her protected activity.

"[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (5th Cir.

14

2013). In the context of a retaliation claim, "but-for" causation requires a plaintiff to show that she would not have suffered the materially adverse action had she not engaged in protected activity such as filing an EEO complaint. *Finnie v. Lee Cnty.*, 541 F. App'x 368, 371-72 (5th Cir. 2013). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). Once a plaintiff makes a prima facie showing of causation, "the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996). If the employer does so, the plaintiff must demonstrate that the proffered reason is pretextual. *Saketkoo*, 31 F.4th at 1002.  The "heightened but-for causation requirement applies only in the third step (the pretext stage)." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

a.   Causation element of Plaintiff's prima facie case

Plaintiff made her initial informal EEO complaint on December 1, 2017, Ex. [71-3] at 65, and Ceasar learned of Plaintiff's complaint a few days later, on December 5, 2017, Ex. [74-1] at 2. On the same day she learned of the activity, Ceasar emailed Lindsay Lechner[1] to request Plaintiff's leave report from January 2016 onward. Ex. [74-2] at 2. Also in December 2017, one of Plaintiff's co-workers,

---

[1] The parties' submissions do not provide any information as to the identity of Lindsay Lechner other than that she is the recipient of Ceasar's email.

Ana Lanning ("Lanning"), was instructed to audit Plaintiff's work. Ex. [71-3] at 101.

During the Department of Veterans Affairs' internal investigation into Plaintiff's

formal EEO complaint, Lanning stated that:

> The service that had most of the issues was the service that I was
> waiting on [Plaintiff] to transition over to me so we communicated on
> what she was doing. I had asked Ms. Ceasar to allow me to pick up the
> service all together so that I could make the corrections and she told me
> I was only to do new action items and [Plaintiff] was instructed to close
> out the work that she started and fix her own mess. It was right around
> December when I started to take on more [sic] active role with the
> service and again I and the service chief asked Ms. Ceasar to allow me
> to take all the outstanding actions over and again I was instructed to
> only take new actions but to report any errors I discovered that
> [Plaintiff] made directly to Ms. Ceasar so that she could add the errors
> to a folder she was compiling as proof because she knew [Plaintiff and
> another coworker] were filing an EEO complaint against her and Ms.
> Wiggins.[2] Ms. Wiggins was reviewing hire actions and told [Plaintiff]
> that she violated veterans preference on a few hire actions for job fair
> applicants and that she illegally hired employees that had no preference.
> So I did an audit of the applicants and discovered that there were
> veterans who should have been offered positions first but instead of
> offering help and training to [Plaintiff] they just continued to demean
> her and her work.

*Id.* Ceasar states that she did not recommend a proposed removal, but she provided

information in support of the proposed removal. Ex. [71-8] at 10. This information

appears to include forwarding the audit performed by Lanning to Matthew Stapley

("Stapley") who proposed Plaintiff's removal. Ex. [66-6] at 1-2; [71-8] at 10; [71-11]

at 2-3; [71-13] at 2. The errors found in this audit served as one of the bases for

Plaintiff's proposed removal, which Plaintiff received on February 20, 2018. Ex. [71-

---

[2] "Ms. Wiggins" refers to Chiria Wiggins who, like Plaintiff, worked as an HR Specialist at the Gulf
Coast Veterans Health Care System during the relevant period. Ex. [71-3] at 100-01, 122. Wiggins
"was asked by the Acting HRO [Ceasar] to serve in the role of a Quality Reviewer" for personnel
actions to identify illegal hires and other improper actions. *Id.* at 125-26. During the Department of
Veterans Affairs' internal investigation, one of Plaintiff's co-workers described Wiggins as Ceasar's
"co-conspirer." *Id.* at 119.

3] at 134-44. From December 5, 2017, to February 20, 2018, is approximately two-and-a-half months, which is "close enough to show a causal connection," especially considering Lanning's testimony about Ceasar wanting a record of Plaintiff's errors because she was aware Plaintiff was filing an EEO complaint against her. *See Garcia*, 938 F.3d at 243; Ex. [71-3] at 101. Plaintiff therefore can satisfy her summary judgment burden as to causation, which is the last element of her prima facie case.

b.    <u>Defendant's non-retaliatory reasons for its employment actions</u>

The burden shifts to Defendant, who has provided legitimate, non-retaliatory reasons for Plaintiff's reassignment and proposed removal. As the notice of proposed removal details, Defendant found that Plaintiff had repeatedly erred in completing her assigned duties by making incorrect eligibility determinations, failing to process an employee transfer request for several months, bypassing veteran preferences for a non-preference employee, and refusing to issue a certificate as instructed by her supervisor. Ex. [71-3] at 134-44. Defendant also cites Plaintiff's unprofessional conduct as a justification for the reassignment and removal. Mem. [66] at 24; Ex. [66-6] at 1-2; Ex. [71-3] at 134. These constitute legitimate, non-retaliatory reasons justifying Defendant's actions. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) (holding that the plaintiff's "poor performance and "the charge that she got along poorly with her fellow employees" was "a legitimate, [non-retaliatory] justification of the timing of her termination").

c.   <u>Pretext</u>

Plaintiff must now produce evidence that the reasons offered by Defendant

were pretextual. *Id.*; *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir.

2021). To show pretext, a plaintiff must establish that "protected conduct was *the*

reason for the adverse action." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835

(5th Cir. 2022) (emphasis in original) (discussing the pretext standard for a Title

VII retaliation case); *Cohen*, 557 F. App'x at 278 n.6 (5th Cir. 2014) (applying the

but-for causation and pretext standard from Title VII retaliation cases to a

Rehabilitation Act retaliation case (citing *Nassar*, 570 U.S. at 362)). "Pretext can be

proven by any evidence that casts doubt on the credence of the employer's proffered

justification for the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*,

969 F.3d 571, 578 (5th Cir. 2020).

"[T]emporal proximity alone is insufficient to prove but for causation," *Strong*

*v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), so a plaintiff

must point to additional evidence to show pretext, *Garcia*, 938 F.3d at 243-44. "The

combination of suspicious timing with other significant evidence of pretext can be

sufficient to survive summary judgment." *Id.* at 244 (quoting *Shackelford*, 190 F.3d

at 409). For example, a plaintiff who shows that "his work evaluation changed

dramatically after he began complaining" about discrimination can survive

summary judgment. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001)

(reversing a grant of summary judgment where the plaintiff had one complaint in

his personnel record in his twenty years with the company prior to his protected

18

activity but received eight to ten complaints a month for several months following his protected activity). This Court has denied summary judgment based on suspicious timing plus additional evidence where a plaintiff offered testimony that supervisors stated that "she would not have been hired if they had known about [her] EEOC charge" and she was fired within four months of the protected activity, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-cv-214-KS-JCG, 2020 WL 185023, at *4 (S.D. Miss. Jan. 13, 2020), and where an employer had reason to know of the potential misconduct by the plaintiff used to justify the employment action but only investigated the misconduct after learning of the plaintiff's protected activity, *Embry v. Integrity Intern. Sec. Servs., Inc.*, No. 5:08-cv-191-DCB-JMR, 2009 WL 1364704, at *2-3, 7 (S.D. Miss. May 12, 2009).

Plaintiff contends that Defendant's claims of misconduct and poor performance are "entirely unsupported and unjustified." Mem. [72] at 18; Ex. [71-21] at 2-3. But merely disputing Defendant's perception of her work performance is insufficient to show pretext. *Shackelford*, 190 F.3d at 408-09; *Payne v. Univ. of S. Miss.*, 643 F. App'x 409, 411-12 (5th Cir. 2016) (per curiam) ("The question is whether the employer's *perception* of the plaintiff's performance, accurate or not, was the real reason for the challenged adverse employment action."); *Coleman v. Jason Pharms.*, 540 F. App'x 302, 305 (5th Cir. 2013) ("'Because even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee,' an employee must submit evidence to 'support an inference that the employer had a retaliatory motive, not just an incorrect belief.'"

(quoting *Haverda v. Hays Cnty.*, 723 F.3d 586, 596 n.1 (5th Cir. 2013))). Moreover, Plaintiff's evidence challenging Defendant's examples of her alleged poor performance consists of her own statements and her declaration, Mem. [72] at 10-11; Ex. [71-14] at 44-48; [71-21] at 2-3, despite her deposition testimony that she did not know how to qualify the applicants for the positions at issue, *see* Ex. [71-14] at 11, 20, 33-36, 44-46, and that she "was not going to agree or disagree with" the statement that mistakes were made in hiring decisions "because [she did]n't know," *id.* at 35-36. The record further includes numerous statements by others who found errors in Plaintiff's work. Ex. [66-6] at 1-2; [71-3] at 87, 101, 126-27; [71-11] at 2-3; [75-2] at 1-2; [75-3] at 1-4. Plaintiff therefore cannot show pretext on this basis.

Plaintiff further maintains that "the proposed penalty is far beyond what would be typical" for her alleged misconduct. Mem. [72] at 18. A failure to follow stated disciplinary policy can suggest pretext. *See Lindsey v. Bio-Med. Applications of La., L.L.C.*, 9 F.4th 317, 326-27 (5th Cir. 2021). Plaintiff points to a "Table of Penalties" for misconduct by employees of the Department of Veterans' Affairs to support her contention on this point, stating that "the alleged misconduct would justify a maximum penalty of 'reprimand.'" *Id.* at 10 (citing Ex. [71-15]). However, the Table of Penalties notes removal as a possible penalty for a first offense of disrespectful conduct to supervisors or other employees, such as Plaintiff's alleged conduct in a meeting with her supervisors and fellow employees where she "raised [her] voice at Ms. Ceasar and stated, 'I am done with this,'" and slammed her

notebook on the table, "made physical contact with Ms. Ceasar's chair," and "slammed the door while exiting the room." Ex. [71-3] at 134; [71-15] at 4.

The Table also states that "[d]eliberate refusal to carry out any proper order from a supervisor having responsibility for the work of the employee" can result in removal. Ex. [71-15] at 4. The notice of proposed removal quoted a January 2018 email from Plaintiff sent in response to a request from Ceasar asking Plaintiff to issue a certificate where Plaintiff stated, "[a]s Ms. Ceasar is the supervisor it will be up to her to instruct someone to issue the certs. I have let everyone know that I do not feel comfortable and I will NOT be issuing this cert." Ex. [71-3] at 142 (emphasis in original). Plaintiff's quoted statement indicates a refusal to carry out an order from her supervisor. Consequently, Plaintiff has not shown that Defendant's proffered justification for its employment actions contravened its disciplinary policies. *See id.* at 134-142; Ex. [71-15] at 4.

Next, Plaintiff points to the ultimate rescinding of her proposed removal and her return to Human Resources as evidence that Defendant's actions were based on her protected activity rather than on stated reasons. Mem. [72] at 18; Ex. [71-17] at 2. Defendant argues that the removal was rescinded due to a "change in the chain of command and the deciding official." Reply [75] at 8; Ex. [71-18] at 10. The official who issued the rescission, James Leehan ("Leehan"), testified that he never investigated the grounds for the proposed removal and "had no knowledge of the circumstances of why the action was initially proposed." Ex. [71-18] at 10. He further noted that the change in the deciding official created what he saw as a due

process problem if the proposal was not withdrawn. *Id.* at 8-10. Plaintiff contends that Leehan's statements are false because he did not rescind the proposed removal of one of Plaintiff's coworkers, despite the same change in the command chain and deciding official, and instead issued an addendum which notified the coworker of the change and gave her a new opportunity to provide a written response. Mem. [72] at 12; Ex. [71-19] at 2.

While the difference in treatment between Plaintiff's proposed removal and that of her coworker can support an inference that a rescission was not required due to the change in the chain in command, Plaintiff offers only speculation that Defendant withdrew her proposed removal because its original issuance was retaliatory. *See* Mem. [72] at 12. Plaintiff has not provided sufficient evidence contesting Leehan's statement that he was not aware of why she received a proposed removal, and her subjective belief that the real justification behind the rescission was that he discovered the proposed removal was retaliatory is insufficient to show pretext. *See Jones*, 8 F.4th at 369.

Lastly, Plaintiff contends that the audit of her hiring decisions related to a 2017 job fair demonstrates pretext. Mem. [72] at 16-17. The errors found through this audit served as a central basis of the proposed removal, *see* Ex. [71-3] at 136-41, and Ceasar specifically sent the audit results to Stapley, who proposed Plaintiff's reassignment and removal, Ex. [66-6] at 1-2; [71-8] at 10; [71-11] at 2-3; [71-13] at 2. Plaintiff contends that the timing of this audit and Lanning's aforementioned statement about Ceasar wanting a report of Plaintiff's errors because of Plaintiff's

protected activity demonstrate pretext. *Id.* Defendant counters that "[t]here is no connection nor evidence that Ceasar directed [Lanning] to perform an audit because Plaintiff had filed an EEO complaint," rather the audit was conducted because "it was found that Plaintiff had violated veterans preference on a hire actions [sic] and that Plaintiff illegally hired employees that had no preference." Reply [75] at 6-7.

For the job fair, Plaintiff was tasked with reviewing the resumes of applicants to determine whether they were qualified. Ex. [71-14] at 32-33; Ex. [75-3] at 1. She then "created a ranked certificate of eligibles list" from the job fair which was used to hire employees. Ex. [71-3] at 136. This list allegedly violated veterans preferences, leading to improper hires and disruption for the agency. Ex. [75-2] at 1; [75-3] at 2. The record is unclear when exactly the problems with the job fair hires were discovered, but Plaintiff has put forth evidence suggesting that the investigation into the job fair coincided with her EEO complaint, despite her submitting the ranked certificate in September 2017 and the improper hire selections being made in October 2017. *See* Ex. [71-3] at 101, 136.

Plaintiff's argument relies primarily on Lanning's testimony that "right around December," Ceasar told her "to report any errors [she] discovered that [Plaintiff] made directly to Ms. Ceasar so that she could add the errors to a folder she was compiling as proof because she knew [Plaintiff was] filing an EEO complaint against her and Ms. Wiggins." Ex. [71-3] at 101. Lanning further stated that Wiggins noticed that Plaintiff "violated veterans preferences on a few hire actions for job fair applicants," which led to Lanning completing "an audit of the

applications and discover[ing] that there were veterans who should have been offered positions first." *Id.* Plaintiff construes Lanning's statement as demonstrating that Ceasar was compiling evidence of Plaintiff's errors because of her protected activity and the investigation into the job fair fell within this plan. Mem. [72] at 16-17.

Emails discussing this audit of the job fair offer some support for Plaintiff's position. Lanning emailed Ceasar about potential errors in the job fair hires on December 7, 2017, two days after Ceasar learned of Plaintiff's EEO complaint. Ex. [75-3] at 4. The following day, Lanning noted that she hoped the error found was "an isolated incident," indicating that the full extent of the problems with the job fair was not yet realized. *Id.* at 2-3. On December 10, 2017, Ceasar sent an email, requesting a pause in hiring until a complete audit could be performed. *Id.* at 2. Lanning completed the audit by December 19, 2017. Ex. [17-11] at 3. Lanning later resent the email to Ceasar on January 31, 2018, and Ceasar forwarded it to Stapley. Ex. [17-11] at 2-3.

Considered in light of Lanning's statement about Ceasar instructing Lanning to report Plaintiff's errors because of Plaintiff's protected activity and Ceasar's use of this audit in communications regarding Plaintiff's proposed removal and reassignment, Plaintiff's evidence casts doubt on whether she would have received the proposed removal and reassignment had she not engaged in protected activity. A reasonable factfinder could conclude that, but for Plaintiff filing an EEO complaint against Ceasar, Ceasar would not have instructed Lanning to investigate

24

Plaintiff's work nor sent the resulting audit to Stapley as evidence supporting Plaintiff's proposed removal and reassignment. Combined with Plaintiff's other evidence suggesting Ceasar's retaliatory motives, such as her email requesting Plaintiff's leave history less than an hour after she was informed of Plaintiff's protected activity, Ex. [74-1] at 2; [74-2] at 2, Plaintiff has demonstrated a genuine dispute of material fact as to whether Ceasar was looking for an excuse to have Plaintiff reassigned or removed and sought to catalogue the job fair errors as a means to achieve that goal.

Based on all of the foregoing, Defendant's Motion [65] for Summary Judgment should be denied as to Plaintiff's Title VII and Rehabilitation Act retaliation claims.

C.   Plaintiff's hostile work environment claims

Plaintiff has also asserted claims of a hostile work environment based on her race and disability in violation of Title VII and the Rehabilitation Act. Compl. [1] at 10-12. The Court finds that the Defendant is entitled to summary judgment as to these claims.

1.   Title VII hostile work environment claim

"To survive summary judgment on a hostile work environment claim based on race . . . discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have

known' about the harassment and 'failed to take prompt remedial action.'" *West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020) (quoting *Ramsey v. Henderson*, 268 F.3d 264, 268 (5th Cir. 2002)). This is a high standard, requiring a plaintiff to show harassment "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 741-42 (quoting *Aryain*, 534 F.3d at 479)).

In determining whether an environment is objectively hostile, courts consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* at 742 (cleaned up).

Plaintiff has failed to show pervasive or severe racial harassment. She vaguely points to "harsh[er]" treatment from a coworker, Ex. [71-3] at 105, and Ceasar's alleged all-black inner circle, *id.* at 109, as the examples of harassment. She also discusses a single incident where Ceasar let those who attended a party leave work one hour early but did not dismiss Plaintiff and two of her white coworkers who refused to attend. Mem. [72] at 8; Ex. [71-3] at 120. Isolated occurrences such as these are insufficient, *West*, 960 F.3d at 742-43, and Plaintiff has not pointed to any other evidence of severe, physically threatening, or humiliating treatment as to alter the conditions of her employment. Defendant is therefore entitled to summary judgment as to Plaintiff's Title VII hostile work environment claim based on race.

26

2.    Rehabilitation Act hostile work environment claim

A plaintiff must satisfy the same five elements as a Title VII hostile work environment claim in order to demonstrate a hostile work environment under the Rehabilitation Act. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 506 (5th Cir. 2002) (noting that a plaintiff must show "(1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action." (quoting *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001))). Further, under the Rehabilitation Act, a plaintiff must show "that the harassment complained of was based *solely* on her disability." *Id.* at 506 n.8 (emphasis in original).

Defendant is entitled to summary judgment as to Plaintiff's Rehabilitation Act hostile work environment claim for the same reasons as her Title VII claim. Plaintiff points to isolated comments, Mem. [72] at 19; Ex. [71-3] at 78 (stating that Ceasar said that Plaintiff "live[d] at the Dr.'s office" and, a few weeks later, said that Plaintiff should seek reasonable accommodations but that she would be downgraded), none of which are sufficient to show the requisite pervasiveness or severity, *see Soledad*, 304 F.3d at 502, 506 (holding that the plaintiff did not show a hostile work environment where his supervisor said that he did not believe the plaintiff was disabled, made derogatory comments about his diagnosis and work

recommendations, and told him that "he would be terminated because the doctor's orders were incompatible with the requirements of the job"). Plaintiff's other evidence of a hostile work environment also is insufficient because she points to the same actions allegedly taken against her in retaliation for her protected activity as examples of harassment, Mem. [72] at 19, and therefore has failed to show that the harassment "was based *solely* on her disability," as is necessary to survive summary judgment. *Soledad*, 304 F.3d 506 n.8 (emphasis in original).

D.    Disability interference

The Complaint [1] also raised a claim for disability interference. Defendant's Motion [65] for Summary Judgment will be granted as to that claim because Plaintiff has abandoned it. Mem. [72] at 12-13 & 13 n.2 ("The 'interference' claim is no longer being pursued by the Plaintiff.").

## III. CONCLUSION

To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Denis Richard McDonough, in his capacity as Secretary of the U.S. Department of Veterans Affairs' Motion [65] for Summary Judgment is **GRANTED IN PART** as to Plaintiff Lenora Jones's claims for disability interference and for a hostile work environment in violation of Title VII and the Rehabilitation Act, and **DENIED IN**

**PART** as to Plaintiff Lenora Jones's claims for retaliation in violation of Title VII and Rehabilitation Act.

      **SO ORDERED AND ADJUDGED**, this the 9th day of November, 2022.

                                      *s/ Halil Suleyman Ozerden*

                                        HALIL SULEYMAN OZERDEN
                                        UNITED STATES DISTRICT JUDGE